NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250790-U

NO. 4-25-0790

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| DAKOTA MARCUS SHULTS, | ) | No. 23CF183 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted the Office of the State Appellate Defender's motion to withdraw and affirmed the trial court's judgment.

¶ 2    Defendant, Dakota Marcus Shults, appeals his two convictions for criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2022)). The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. OSAD now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the basis that any request for review in this case would be without merit. Upon reviewing counsel's memorandum of law in support of his motion to withdraw and the record in this case, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    In March 2023, the State charged defendant with two counts of criminal sexual

assault (*id.*), in that he committed two acts of sexual penetration with a single victim (by placing his penis in her mouth and his fingers in her vagina, respectively) while knowing the victim was unable to give knowing consent.

¶ 5        On April 3, 2025, the State filed a motion *in limine* to prohibit any questioning or inferences regarding any possible sexual activity between the victim and anyone other than defendant pursuant to section 115-7 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7 (West 2024)). The motion specifically requested that defendant be barred from presenting evidence that forensic testing showed that a small amount of male DNA, from which he was excluded as the contributor, was found on the victim's sports bra. The sample was collected when the victim was examined at the hospital shortly after the incident.

¶ 6        That same day, the State filed a second motion *in limine* to admit evidence of statements the victim made to a nurse, Bethany Sage, regarding her account of the assault while Sage was examining her.

¶ 7        On April 21, 2025, the trial court granted both of the State's motions *in limine*. The court's order stated that defendant had conceded both motions.

¶ 8        The matter proceeded to a jury trial. The victim testified that she was 17 years old on the night of the incident. She stated that she met defendant when they were in high school together. Defendant was one or two years ahead of her in school. At the time of the incident, defendant was no longer in high school and was in the army. The victim stated that she and defendant were friends at the time of the incident and they had never had a romantic or sexual relationship.

¶ 9        The victim testified that, on the night of the incident, she and defendant arranged to meet over Facebook, and she walked to a park to meet him. The victim arrived at the location

a few minutes before defendant. She sat on a bench and smoked marijuana that she had brought with her. She did not feel intoxicated or high before defendant arrived. When defendant arrived at the park, he and the victim talked for a while and played in the snow. The victim became cold, and she and defendant sat down in the back seat of defendant's vehicle. She sat behind the driver's seat, defendant sat behind the passenger seat, and the middle seat between them was empty. The victim stated she did not believe she smoked any more marijuana inside the vehicle, but she indicated it was possible. When asked if defendant knew she had been smoking marijuana, the victim replied that he knew she had it.

¶ 10 The victim stated that she fell asleep while she and defendant were talking in the vehicle due to the effects of the marijuana and being tired from not having slept the night before. When she fell asleep, she was sitting up, and her head was near the window. When she awoke, her head was on defendant's lap, his penis was in her mouth, and his fingers were inside her vagina. The victim pushed herself off of defendant and began sobbing. Defendant "apologized profusely." The victim exited the vehicle, and defendant followed. She yelled at him and slapped him across the face. Defendant tried to apologize to her again, and she told him if he was sorry, he could at least drive her home, which he did.

¶ 11 The victim testified that when she walked into her house, her father asked her if she was okay because it was obvious that she had been crying. The victim told her father what happened, and he called her older sister. The victim's older sister then called the police. After talking to a police officer, the victim went to the hospital and underwent a sexual assault examination. The victim stated that she did not consent to defendant putting his penis in her mouth or his fingers in her vagina, and she was not awake when he did these things.

¶ 12 The victim's father testified that he could tell the victim was upset when she came

home on the night of the incident. She told him she had been sexually assaulted, but she wanted to discuss it with her older sister rather than him. He then called the victim's older sister, and she came over to the residence. They called the police, and the victim went to the hospital.

¶ 13　　　　Krysta Roberts testified that she was dating defendant at the time of the incident but broke up with him shortly afterward. She stated defendant told her that he hung out with the victim at the park and she put her head in his lap. He stated he touched her over her clothes on her head and her "butt," but the victim did not "engage in the touching." He told Roberts that he never "undid" his pants. Roberts stated defendant told her that the victim did not "react much."

¶ 14　　　　Bethany Sage, a sexual assault nurse examiner, testified that she examined the victim on the night of the incident. The victim told her that the assailant put his penis in her mouth and inserted his fingers into her vagina. Sage stated that she collected the victim's clothing, including her underwear, during the examination.

¶ 15　　　　DNA testing of the victim's underwear from the night of the incident revealed a "partial Y-STR haplotype," from which defendant could not be excluded as a contributor. A forensic scientist testified that it was 170 times more likely that defendant or a male relative was the contributor than a randomly selected male, which provided "moderate support" that defendant was the contributor.

¶ 16　　　　During the jury instruction conference, defense counsel asked the trial court to give Illinois Pattern Jury Instructions, Criminal, Nos. 11.63 and 11.63A (approved Dec. 8, 2011) (hereinafter IPI Criminal Nos. 11.63 and 11.63A), which are instructions on the defense of consent and definition of consent, respectively. The State argued that defendant had not presented sufficient evidence of consent to receive the instruction, but the defense could argue that the State had failed to meet its burden of proving the victim lacked the capacity to consent.

Defense counsel stated that the defense was admitting that digital penetration occurred and argued that the jury should be given a consent instruction on that count. Defense counsel acknowledged that the instruction would be inappropriate with regard to the oral penetration count because defendant was denying that occurred. Defense counsel argued that defendant had presented sufficient evidence to receive the instruction by eliciting testimony from the victim on cross-examination that she had voluntarily gone to the park, voluntarily entered the back seat of defendant's vehicle, and failed to call 911 at the park, even though she had her cell phone.

¶ 17       The trial court refused to give the proffered consent instructions, noting the committee comments of IPI Criminal No. 11.63 stated that the instruction was to be given when the defense of consent was raised and the use of force or threat of force was an element of the offense. The court stated that all of the cases it had reviewed that used the proffered instructions involved use of force or threat of force as an element of the offense.

¶ 18       The parties rested. During closing argument, defense counsel stated that defendant denied that he engaged in oral sex with the victim. Counsel stated that defendant admitted to digital penetration but denied that he knew the victim was unable to consent. Counsel argued that the victim consented, noting that she "was looking to meet up with [defendant]," and, although she smoked cannabis before he arrived, she denied being high. Counsel questioned how the victim could have walked to the park if she was as tired as she claimed. Counsel also noted that the victim sat in the back seat of defendant's car rather than the front where the heat is stronger. Counsel also stated it was not believable that defendant could have moved the victim's body after she allegedly fell asleep without waking her up.

¶ 19       During jury deliberations, the jury submitted a question stating: "Please define Count 1 and Count 2. 1—Digital Penetration[.] 2—Penis in her mouth." (Emphasis omitted.)

With the agreement of the parties, the trial court submitted the following answer: "1. The allegation in Count 1 is oral penetration (penis in her mouth)[.] 2[.] The allegation in Count II is digital penetration."

¶ 20 The jury found defendant guilty of both counts of criminal sexual assault.

¶ 21 On June 10, 2025, defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. The motion asserted that the State had failed to prove him guilty beyond a reasonable doubt. The trial court denied the motion.

¶ 22 A presentence investigation report (PSI) was prepared. The PSI indicated that defendant had no criminal history, other than two minor traffic offenses. The PSI showed that defendant had graduated from high school, had completed one year of technical school, had been in the army, and was employed. A victim impact statement prepared by the victim was attached to the PSI.

¶ 23 On July 25, 2025, a sentencing hearing was held. Defendant submitted five character letters from his family and friends and made a statement in allocution. The trial court noted that it had reviewed the PSI, the evidence presented; defendant's statement in allocution, the arguments of counsel, all statutory and nonstatutory factors in aggravation and mitigation, and the victim impact statement. In mitigation, the court found defendant had virtually no criminal history. In aggravation, the court found there was a need to deter others from committing the same offense. The court stated that even when a defendant maintains his innocence, "there can be ways to express empathy also perhaps for the victim or some type of accountability," and it noted defendant did not do so during his statement in allocution. The court indicated it had considered defendant's history, character, rehabilitative potential; the seriousness of the offense; the need to protect society; and the need for deterrence. The court imposed

consecutive sentences of four years and five months' imprisonment on both counts of criminal sexual assault.

¶ 24    On July 28, 2025, defendant filed a motion to reduce sentence, arguing that the trial court failed to properly weigh the factors in mitigation. The court denied the motion.

¶ 25    This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, OSAD has moved to withdraw pursuant to *Anders*, asserting there is no issue of arguable merit that may be raised on appeal. OSAD asserts that defendant was informed by phone and letter of counsel's conclusion that the appeal was without arguable merit and counsel mailed a copy of his motion to withdraw to defendant. Defendant has not filed a response.

¶ 28    Under the procedure outlined in *Anders*, when counsel moves to withdraw on the basis that no issue of arguable merit may be raised on appeal, the motion must be accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders*, 386 U.S. at 744. Here, counsel indicates that he considered raising the following issues: (1) whether the evidence was sufficient to prove defendant guilty beyond a reasonable doubt; (2) whether the State's motions *in limine* were properly granted; (3) whether the trial court complied with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); (4) whether the court properly denied defense counsel's request to present jury instructions on the defense of consent; (5) whether the court properly responded to the jury note; and (6) whether the court erred in sentencing defendant. Counsel asserts that he has concluded that the foregoing issues would be without arguable merit.

¶ 29                            A. Sufficiency of the Evidence

¶ 30    Counsel indicates that he considered challenging the sufficiency of the State's

evidence but concluded that any such argument would lack merit. When presented with a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." (Internal quotation marks omitted.) *People v. Johnson*, 2026 IL 131337, ¶ 77.

¶ 31        To prove defendant guilty of the two counts of criminal sexual assault charged in the instant case, the State was required to prove that (1) defendant committed acts of sexual penetration (by placing in his penis in the victim's mouth and his fingers in the victim's vagina, respectively) and (2) he knew the victim was "unable to give knowing consent." 720 ILCS 5/11-1.20(a)(2) (West 2022).

¶ 32        Here, the trial evidence, viewed in the light most favorable to the State, was sufficient to prove defendant guilty beyond a reasonable doubt of both counts of criminal sexual assault. The victim testified that she fell asleep in the back seat of defendant's vehicle, and, when she awoke, defendant's penis was in her mouth, and his fingers were in her vagina. She stated that she did not consent to this and was asleep when it occurred. The State's evidence showed that, shortly after the incident occurred, the victim disclosed the assault to her father and sister and underwent an examination at the hospital. Also, DNA testing showed that defendant could not be excluded as the contributor for male DNA found in the victim's underwear on the night of the incident, though only a "partial Y-STR haplotype" could be tested. Thus, we agree with counsel that an argument that the evidence was insufficient would lack merit.

¶ 33                                    B. Motions *in Limine*

¶ 34        Counsel asserts that he considered challenging the trial court's rulings on the State's motions *in limine* but concluded that any such argument would lack merit. The record reveals that defense counsel conceded both motions *in limine*, so to challenge the court's rulings on the motions, appellate counsel would have to argue that trial counsel was ineffective for conceding them. To establish a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *People v. Domagala*, 2013 IL 113688, ¶ 36.

¶ 35        We agree with counsel that no argument of arguable merit can be made that the trial court improperly granted the State's motion *in limine* to admit the victim's statements to Sage under section 115-13 of the Code (725 ILCS 5/115-13 (West 2024)). Section 115-13 provides that, in prosecutions for criminal sexual assault, an exception to the hearsay rule exists for "statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.* Courts have liberally construed the hearsay evidence admissible under this section. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 79. Here, the victim's statements to Sage that the assailant placed his fingers in her vagina and his penis in her mouth were reasonably pertinent to her diagnosis and treatment. Accordingly, any argument that trial counsel was ineffective for conceding the State's motion would lack arguable merit.

¶ 36        We also agree with counsel that no argument of arguable merit can be made that the trial court improperly granted the State's motion *in limine* to preclude the defense from presenting evidence that another male's DNA was found on the victim's sports bra pursuant to

section 115-7(a) of the Code (725 ILCS 5/115-7(a) (West 2024)). Section 115-7(a) provides that in prosecutions for criminal sexual assault, evidence of the prior sexual activity or the reputation of the alleged victim is inadmissible except (1) as evidence concerning the past sexual conduct of the victim with the accused when offered by the accused upon the issue of consent or (2) when the evidence is constitutionally required to be admitted. *Id.* Here, the evidence at issue would not be admissible for either of these two purposes; it would merely tend to show that another male had come into contact with the victim's sports bra at some point. Moreover, such evidence would be irrelevant to the charges at issue in the instant case, as the victim never claimed defendant touched her breasts or bra. Accordingly, an argument that trial counsel was ineffective for conceding this motion would lack merit.

¶ 37                                C. Rule 431(b)

¶ 38        Counsel indicates that he considered arguing that the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) but concluded that such an argument would lack merit. We agree. Rule 431(b) requires that the trial court ask each potential juror whether he or she understands and accepts that (1) the defendant is presumed innocent of the charges; (2) before a defendant can be convicted, the State must prove that he or she is guilty beyond a reasonable doubt; (3) the defendant is not required to offer any evidence on his or her own behalf; and (4) if the defendant does not testify, it cannot be held against him or her. *Id.* Our review of the record shows that the trial court asked the requisite questions of each potential juror.

¶ 39                           D. Consent Instruction

¶ 40        Appointed counsel asserts that he considered arguing that the trial court erred by denying defense counsel's request that the jury be instructed on the defense of consent as to the

count of criminal sexual assault alleging digital penetration but concluded that such an argument would lack merit. Because defense counsel failed to argue in the posttrial motion that the court erred by denying his request to instruct the jury on the defense of consent, the issue is forfeited for appeal, and appellate counsel could only raise it as a claim of plain error. See *People v. Hartfield*, 2022 IL 126729, ¶¶ 42-44.

¶ 41            To establish plain error, a defendant must show that a clear or obvious error occurred and (1) "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him" or (2) "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* ¶ 50. In conducting a plain error analysis, courts first determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 42            Here, the trial court did not err by refusing to give the consent instruction. Section 11-1.70(a) of the Criminal Code of 2012 (720 ILCS 5/11-1.70(a) (West 2022)) provides that: "It shall be a defense to any offense under Section 11-1.20 *** of this Code *where force or threat of force is an element of the offense* that the victim consented." (Emphasis added.) As such, the Committee Note to IPI Criminal 11.63 regarding the defense of consent states that this instruction, as well as IPI Criminal 11.63A (defining "consent"), should be given when "the defense of consent is raised on offenses *where proof of force or threat of force is an element*." (Emphasis added.) IPI Criminal 11.63, Committee Note. "While committee comments are not the law, the trial court is allowed to deviate from the suggested instructions and format only where necessary to conform to unusual facts or new law." *People v. Banks*, 287 Ill. App. 3d 273, 280 (1997). Here, force or threat of force was not an element of the charged offenses, and the instant case did not present a situation of unusual facts or new law that would require a deviation

from the suggested instructions.

¶ 43      Even if we were to find that a consent instruction may be properly given in cases not involving an allegation of force or threat of force, the trial court's refusal to give the instruction in this case was not error. "A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence, and if there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury." *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997). "Very slight evidence upon a given theory of a case will justify the giving of an instruction." *Id.* at 132. Here, the trial evidence failed to meet even the "[v]ery slight evidence" (*id.*) threshold necessary for giving the consent instruction. The victim testified that she did not consent to the charged conduct and was asleep when it occurred. The victim's testimony on this point was not inconsistent. While defense counsel asserted during argument that consensual digital penetration occurred, the only trial evidence that presented an account of the incident different from the victim's testimony was Roberts's testimony that defendant told her he had only touched the victim over her clothes, which was inconsistent with defendant's theory.

¶ 44      While defense counsel argued in the trial court that some of the circumstances surrounding the offense (like the victim willingly meeting defendant at the park and willingly entering the back seat of his vehicle) supported an inference of consent, courts have rejected similar arguments. See *People v. Barnwell*, 285 Ill. App. 3d 981, 991 (1996) (holding that evidence the victim may have permitted the defendant to enter the vehicle in which she claimed he sexually assaulted her was insufficient to support a consent instruction); *People v. Brown*, 214 Ill. App. 3d 836, 846 (1991) (holding that no inference of consent to the charged sexual acts arose from evidence that the victim willingly accompanied the defendant to his hotel room and

attempted to call him after the alleged assault); *People v. Wheeler*, 200 Ill. App. 3d 301, 308 (1990) (holding that any inferences arising from circumstantial evidence of the parties' past relationship and the victim's conduct after the incident were too remote to constitute the very slight evidence required for a consent instruction).

¶ 45                                                    E. Jury Note

¶ 46            We agree with appointed counsel that an argument the trial court responded improperly to the jury's note would be meritless. "When the jury asks a question on a point of law, when the original instructions are incomplete, or when the jurors are manifestly confused, the court has a duty to answer the question and clarify the issue in the minds of the jurors." *People v. Lewis*, 2022 IL 126705, ¶ 58. Here, the jury expressed confusion as to what form of sexual penetration was charged in count I and count II of the charging instrument. A review of the record shows that the jury instructions did not state which conduct was at issue for the two counts. The trial court's response to the question accurately stated what conduct was at issue for each count, and the parties agreed to the court's response.

¶ 47                                                    F. Sentencing

¶ 48            Finally, counsel states that he considered arguing that the trial court erred in sentencing defendant but determined that such an argument would be meritless. We agree.

¶ 49            "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age differently. *Id.* at 213. We will not alter the trial court's sentence absent an abuse of discretion. *Id.* at 212. "A sentence will be

deemed an abuse of discretion where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Id.*

¶ 50 Here, defendant faced a potential sentencing range of 4 to 15 years' imprisonment on each count of criminal sexual assault. 720 ILCS 5/11-1.20(b)(1) (West 2022); 730 ILCS 5/5-4.5-30(a) (West 2022). Pursuant to section 5-8-4 (d)(2) of Unified Code of Corrections (730 ILCS 5/5-8-4(d)(2) (West 2022)), it was mandatory that defendant's sentences be served consecutively. Thus, defendant's aggregate sentence of 8 years and 10 months' imprisonment was only 10 months higher than the statutory minimum sentence. The trial court indicated that it considered all the relevant sentencing evidence and factors, and nothing in the record indicates otherwise. Accordingly, we agree with counsel that an argument that the court abused its discretion in sentencing defendant would be meritless.

¶ 51                                    III. CONCLUSION

¶ 52 For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 53 Affirmed.